### N. GIROD'S LEGATEES *v.* H. PARGOUD.

A vendee has no claim against his vendor for the reimbursement of expenses incurred in defending a title which was set aside for fraud, of which the vendee not only had knowledge, but in which he participated.

As between two executors, the action of the court cannot be invoked for the purpose of assessing their proportionate shares of a liability growing out of a joint fraudulent administration.

Where it was stipulated, in a consent judgment, that an intervention, to which an exception and answer in reconvention had been filed, should be withdrawn, and the whole litigation terminated, *Held:* that the consent judgment cannot be considered merely as a judgment on the exception, dismissing the intervention, but as a final judgment on the adverse claims of the intervenor and the defendants.

APPEAL from the Sixth District Court of New Orleans, *Cotton*, J.

*Soulé* and *L. Janin*, for plaintiff. *Benjamin, Bradford & Finney*, for defendant.

LEA, J. The facts out of which the litigation in this case arises are substantially as follows:

*Claud François Girod*, a resident of the parish of Assumption, in this State, died in the year 1813, leaving a last will and testament, by which (after making certain particular legacies) he bequeathed the bulk and residue of his estate in equal shares to eight of his brothers and sisters. One of these brothers, by name *Jean François Girod*, died subsequently, leaving a will; by which he constituted, as his universal legatee, his brother, who bore the same name with himself. Thus the surviving *Jean François Girod* became entitled to two-eighths of the estate of *Claude François Girod*.

By the terms of the will of *Claude François Girod*, his brothers, *Nicholas* and *Jean François Girod*, both then residents of this State, were appointed his testamentary executors, which trust, it appears, they administered unfaithfully. By means of sales made under the sanction of judicial authority they became, through persons interposed, the purchasers of the entire estate of their testator:

42

*Nicholas* becoming the purchaser of the property in New Orleans, and his bro-ther, *Jean François,* and himself becoming the joint purchasers of the lands and slaves in the parish of Assumption and elsewhere.   Some years afterwards *Jean François* sold out his half of the joint purchase to *Nicholas* for $70,000, who thus became the possessor of the entire estate of his brother *Claude,* which he held until he died, in 1840, leaving a will, by which he bequeathed the sum of $710,000 in different and unequal sums to several public institutions and private individuals in this city, who are the plaintiffs in this suit.

After the death of *Nicholas Girod,* and when it appeared that so large a por-tion of his estate had been diverted from the ordinary channel of inheritance, the legal heirs of *Claude François Girod* instituted a suit in equity in the Circuit Court of the United States, sitting in New Orleans, against the legatees and legal representatives of *Nicholas Girod,* setting forth the foregoing facts, and many other matters of detail, which it is not necessary to recapitulate, claiming that the sales to *Nicholas* and *Jean François Girod,* and the settlements based upon their accounts as executors be set aside and annulled as fraudulent, " that the property be treated as belonging to the estate of *Claude François Girod,* that it should be again sold, and its proceeds distributed among the heirs of *Claude François Girod,* according to his will, and that the defendants be ordered to render an account of the rents and profits of the property from the time of those sales."

This suit was brought against the estate of *N. Girod* alone, the whole of the property having been transferred to him before his death, as before stated. *Jean François* having ceased to be a resident of the country, was not made a party to the litigation.

The plaintiffs gained their case.   The court ordered that the adjudications to *Jean François* and *Nicholas,* of the property belonging to the estate of *Claude François Girod* be set aside and treated as nullities, and that the settlements based upon their accounts, as executors, be also set aside; that the adjustment of the mutual rights and credits to which the parties litigant were entitled should be referred to a master in chancery to take an account of the same and report thereon. And the court further decreed, (inasmuch as *Jean François Girod* was not a party in the cause, but was nevertheless, under the wills of his two brothers, entitled to a share of the estate of *Claude François* to the extent of one-fourth part thereof,) that he should be permitted to " become a party to the proceedings," for the pur-pose of claiming his share in the general distribution, but stating at the same time that his claim would be subject to all the equities subsisting between the said *Jean François* and *Nicholas,* and especially to the allowance of the purchase money given by *Nicholas* to *Jean* for the one-half of the joint purchase of the property of their testator, with interest, etc.

Acting upon the permission granted by the decree of the court, *Jean François Girod* did intervene in the subsequent proceedings, and claimed one-fourth of all the property and sums of money which, by the aforesaid decree, were due or might become due by the estate of *Nicholas Girod* to the estate of *Claude François Girod,* " subject to the deduction of the purchase money paid by the said Nicholas Girod to the said intervenor, as appears from an act passed before Lavergne, notary, on the 19th January,* 1831, *viz : the sum of* $70,000, *with interest* " from the periods at which the several installments respectively became due, according to the stipulations of the act of sale.

To this intervention the legatees made appearance, and on grounds in the exception set forth, excepted to the right of *Jean François* to make himself a party to the proceedings, and claimed "*in case that the court should be of opinion that notwithstanding the exceptions the said Jean François Girod is entitled to make himself a party to the said suit in chancery*, that then the said *François* should account *not only for the sums set forth in the petition, with interest,* but also for all the damage and injury resulting from his illegal and fraudulent conduct as one of the executors in the administration, or rather mismanagement, of the succession of his testator," which damage was alleged to exceed the sum of $300,000.

In this position towards each other stood the respective parties to this suit nearly five years after the original litigation had commenced. . Tired of the past, and uncertain of the future, they concluded to effect a compromise. Its terms are set forth in the briefs of counsel.  In payment of the five-eighths of the balance due the estate of *C. F. Girod,* belonging to the plaintiffs, they were to receive certain designated sums and specified credits, which it appears they were willing to take; the sixth article of the act of compromise, however, stipulates as follows: This proposition is made on the footing that the claim of *J. F. Girod* is withdrawn; *that the whole litigation is terminated;* that the above amount is to be received by the plaintiffs clear of any costs, etc., and that thereafter the estate of *Nicholas Girod* can divide any remaining assets among the legatees.  The terms and stipulations of this compromise were embodied in a consent decree based upon it, bearing date of the 24th April, 1847.

Since then *Jean François Girod* has also died, leaving *Hypolite Pargoud,* the defendant, his universal legatee, and it is against him in that capacity, as the representative of *Jean François Girod,* that the plaintiffs in the institution of this suit have sought to make him responsible, first, for the sum of $70,000, being the price of the half of the joint purchase sold by *C. F. Girod* to his brother *Nicholas;* second, for the sum of $5000, with interest from the 19th January, 1830, being the proceeds of a tract of land sold by *C. F. Girod,* for which the estate of *N. Girod* was held accountable under the judgment before referred to; and third, on the sum of $24,000, with interest, being the one-half of the expenses incurred by the estate of *N. Girod* in defending the defective title obtained from said *J. F. Girod* by the act of sale of 19th January, 1830.

The claim for $5000 on account of the sale to *Robinson* and *Ballard* was abandoned on the trial of the cause in the District Court; and we consider that a claim against a vendor for reimbursement of expenses incurred in defending a title which was set aside on the ground of fraudulent dealings, of which the vendee not only had full knowledge, but in which he participated, cannot be seriously entertained by the court.

We may add, as an incident of the litigation in this case, that the same remark would apply, and would have applied to any claim, as against each other, for a division of their liability for damages growing out of their joint mal-administration.  Neither party could invoke the assistance of the court to determine rights of such a character.

The only issue, therefore, which we think it important to examine is that which has reference to the plea of *res judicata.*  What rights were determined in the compromise upon which the judgment of April 24th, 1847, was based?

The plaintiffs who represented an interest equal to five-eighths of the estate of *Claude François Girod,* had obtained a judgment annulling all proceedings had

during the previous administration thereof, and reinstating the entire succession in a condition to be the subject of a partition among the heirs. The decree provided that all the heirs, whether plaintiffs or not, might intervene to claim a distributive share. *Jean François* was an heir to the extent of one-fourth of the whole estate.

His right to intervene would have been subject to any claims or offsetts which his co-heirs might have against him, but his participation in a fraudulent administration did not and could not destroy his capacity as heir. But whether his right to intervene might have been successfully contested or not, the fact is, that he *did* intervene, and claimed rights amounting in value to $140,000, tendering at the same time reimbursement of the $70,000, the price of the sale made by him to *N. Girod* of the joint purchase they had made from the estate of their deceased brother. The legatees, excepting to his right to intervene, claimed from him not only "the sums set forth in his petition, with interest," but also $300,000 damages.

Can it be contended that upon such pleadings a judgment in favor of the defendants for the whole of their demand would not have embraced the $70,000 with interest, which was referred to in the defendants' answer as the "sum set forth in the petition, with interest?" or that a judgment in favor of the intervenor would not equally have recognized and disposed of this claim, as being included in the general adjustment of their mutual rights?

It is quite clear, then, that *Jean François Girod* was a party to the litigation as well as to the compromise; and had such a judgment as either of those above referred to been rendered on the pleadings, that future litigation with reference to the claim of $70,000 would have been forever closed. But no such judgment was rendered. The parties preferred immediate mutual concession to the uncertainty of future triumph. *Jean François* consented to withdraw and forever abandon his claims; that the estate of *Nicholas Girod* might divide any remaining assets among the legatees, upon the understanding, however, "that the whole litigation is terminated."

That was the consideration for the withdrawal of his claims. It matters not for what object they were urged, or with what motives they were withdrawn. His motives or his intentions formed no part of his contract. His part of that contract has been performed. The plaintiffs have had the benefit of it according to its spirit and tenor, and we think the defendant is entitled to the benefit of the only stipulation contained in it which conferred upon his testator any solid advantage, or extended to him any useful protection, for we have before remarked that, as between the two executors or their representatives, the action of the court could not be invoked for the purpose of assessing their proportionate shares of a liability growing out of a joint fraudulent administration.

It is ordered that the judgment appealed from be affirmed, with costs.